**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Christine Benedict,

      Plaintiff,

v.

Kevin J. Wetherille, *in his individual and official capacity*; Courtney Sebo Savica, *in her individual and official capacity*; Allen Uhlir, *in his individual capacity*; the Honorable Patrick H. Goggins, *in his individual official capacity*; Jeffrey A. Timmerman, *in his individual capacity*; Keith Ellison, *in his official capacity as Attorney General of Minnesota*; James P. Conway, *Moriarty & Wetherille, P.A.*; and Jaspers, Moriarty & Wetherille, P.A.,

      Defendants.

No. 25-cv-2446 (KMM/SGE)

**ORDER**

---

Plaintiff Christine Benedict brought this case under 42 U.S.C. §§ 1983 and 1985 and 18 U.S.C. § 1962(d), alleging that Defendants, who were involved in a probate proceeding that resulted in a determination adverse to her, participated in a "civil RICO conspiracy" that deprived Ms. Benedict of her constitutional rights. (Dkt. 10.) The matter is before the Court on the following motions: Defendants' Motions to Dismiss (Dkts. 19, 27, 34, and 66),[1] Ms. Benedict's Motion for a Temporary Restraining Order and

---

[1] Defendants Keith Ellison, the Honorable Patrick H. Goggins, and Jeffrey A. Timmerman jointly filed a motion to dismiss. (Dkt. 19.) Defendants James P. Conway, Kevin J. Wetherille, and the law firm of Jaspers, Moriarty & Wetherille jointly filed a

1

Preliminary Injunction (Dkt. 3), and Defendant Allen Uhlir's Motion for Sanctions (Dkt. 76).

For the reasons discussed below, the Court grants Defendants' Motions to Dismiss, denies Ms. Benedict's Motion for Injunctive Relief, and denies Mr. Uhlir's Motion for Sanctions. The matter is dismissed with prejudice.

## BACKGROUND

This case arises from an underlying state-court probate proceeding, which is briefly summarized for context. In 2023, following the death of Ms. Benedict's and Mr. Uhlir's father ("decedent"), Mr. Uhlir sued Ms. Benedict in state court, alleging that she had "misappropriated funds, [and] coerced and/or unduly influenced Decedent into transferring probate property directly to her while serving as Decedent's caretaker, and engaged in fraud in so doing." (Dkt. 14-3 (Probate Order) at 3, ¶ 4.[2]) Mr. Uhlir was represented by Defendant Courtney Sebo Savica, and the Honorable Patrick H. Goggins, who is also a named defendant in this case, presided over the proceeding. Ms. Benedict cross-filed a petition seeking to be appointed as the personal representative of decedent's estate, but

---

motion to dismiss. (Dkt. 34.) Defendants Allen Uhlir and Courtney Sebo Savica individually filed motions to dismiss. (Dkts. 27, 66.)

[2] The incorporated state-court documents are from *In re Estate of James Uhlir*, No. 40-PR-23-836 (Le Sueur Cnty. Dist. Ct. 2023). Citations to "Court Index" refer to the docket in that matter. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and quotations omitted) (stating that while courts generally "must ignore materials outside of the pleadings" when considering a motion to dismiss, courts "may consider some materials that are part of the public record or do not contradict the complaint, . . . as well as materials that are necessarily embraced by the pleadings[]"). Consideration of such materials does not require a court to convert a motion to dismiss into a motion for summary judgment. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Judge Goggins denied the petition and appointed Defendant Kevin J. Wetherille instead. (Probate Order at 3, ¶ 6.)

After lengthy litigation, Judge Goggins issued an order on June 4, 2025 directing entry of judgment against Ms. Benedict. (*See* Court Index No. 70.) Judge Goggins found that the factual submissions in Mr. Wetherille's Petition to Void Transfer on Death Deeds and Power of Attorney Executed April 22, 2022 (Court Index No. 44) was "proven by clear and convincing evidence[.]" (Court Index No. 70 at 4, ¶ 9.) Relying largely on Mr. Wetherille's Petition, Judge Goggins determined that the transfer of death deed initiated by Ms. Benedict "created a significant and unexpected deviation in the Decedent's testamentary wishes that inured" significant financial benefit to Ms. Benedict, and her actions "resulted in changes to other financial asset disposition" to her benefit. (*Id.* at 33, ¶¶ 15–16.) Based on his conclusion that the legal documents at issue were void, Judge Goggins granted Mr. Wetherille "the power to recover all assets identified that had dispositional changes using" the void documents, directed him to divide the assets as set forth in the court's order, and instructed Mr. Wetherille to apportion "[his] fees and [Mr. Uhlir's] court costs and legal fees . . . solely against [Ms. Benedict's] share of the Estate." (*Id.* at 35, ¶ 5.) Mr. Wetherille subsequently took steps to enforce the court's order, including by notifying Ms. Benedict that he would recover the real property she occupied at the time. (*See* Dkt. 1 at 14, 37.) As of the date of this Order, Ms. Benedict has not sought appellate review of the district court's final judgment, and the sixty-day deadline for filing an appeal has since passed. *See* Minn. R. Civ. App. P. 104.01, subd. 1.

On June 12, 2025, about one week after the entry of judgment against her in the state-court proceeding, Ms. Benedict initiated this action, alleging that Defendants participated in a "civil racketeering conspiracy" to bring about her "financial and reputational destruction . . . and the seizure of estate-controlled assets through procedural domination," in violation of 18 U.S.C. § 1962(d). (Dkt. 1 at 43.) She also alleged that Defendants violated her due-process rights by seizing her property and denied her access to a "fair and impartial tribunal" by conspiring "to obstruct justice and deprive equal protection." (*Id.* at 41–43.) She filed her Motion for Temporary Restraining Order and Preliminary Injunction on the same day. (Dkt. 3.)

Ms. Benedict filed her First Amended Complaint (Dkt. 10) later that month.[3] The amended complaint added the following defendants: Assistant Attorney General Jeffrey A. Timmerman, who had entered a notice of appearance on behalf of Judge Goggins in this matter; Attorney General Keith Ellison, who is Mr. Timmerman's supervisor; and James P. Conway and his law firm Jaspers, Moriarty & Wetherille, P.A. ("Jaspers"), who represented Mr. Wetherille as a named creditor in Ms. Benedict's bankruptcy proceeding.[4]

---

[3] Ms. Benedict also submitted a Second Amended Complaint (Dkt. 14) that the Court does not consider because it was improperly filed. Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend their complaint once as a matter of course, but any additional amendments require consent from the other party or leave of the court for additional amendments. Fed. R. Civ. P. 15(a)(1)–(2). There is no indication that Ms. Benedict received consent from Defendants, nor has she sought the Court's leave.

[4] The bankruptcy proceeding is unrelated to the probate proceeding, and the details of it are not relevant here. Separately, it appears that Ms. Benedict may have intended her First Amended Complaint to serve as a supplement to her original complaint. This is improper under Local Rule 15.1(a), which states that "[a]ny amended pleading must be complete in itself and must not incorporate by reference any prior pleading." But the Court

(*See* Dkt. 10 ¶ 7.) Throughout July and August 2025, Defendants brought the motions to dismiss and motion for sanctions that are currently before the Court.

Also in August 2025, while those motions were pending, Ms. Benedict petitioned the Minnesota Court of Appeals for a writ of mandamus to compel the district court to "(a) vacate certain orders; (b) remove personal representative Kevin Wetherille; (c) order the personal representative to disgorge all fees and costs he received related to this estate; (d) assign a different judge to the case; and (e) conduct an evidentiary hearing on certain matters," and sought expedited consideration of the petition. (Court Index No. 123 at 1, ¶ 1 (Order, No. 25-1297 (Minn. Ct. App. Aug. 28, 2025)) (cleaned up).) The court denied the petition. (*Id.* at 2–3.)

## DISCUSSION

### I.    Motions to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The facts alleged in the complaint must "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Though pro se complaints are to

---

notes that even if it were to consider the allegations across all of the pleadings together, the result would not change.

5

be construed liberally, they still must allege sufficient facts to support the claims advanced. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).

In applying this standard, courts must assume that all factual allegations in the complaint are true and construe all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024). But courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024) (quoting *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)). In short, there must exist "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### A.    Defendants Ellison, Timmerman, and Judge Goggins

In their motion to dismiss, Defendants Keith Ellison, the Honorable Patrick J. Goggins, and Jeffrey A. Timmerman (collectively "State Defendants") argue that Ms. Benedict's claims against them must be dismissed because they are entitled to immunity. (Dkt. 62.) The Court agrees.

First, the claims brought against Judge Goggins are dismissed because he is protected by judicial immunity. "[G]enerally, a judge is immune from a suit[.]" *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam) (collecting cases). More specifically, "a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Scheffler v. Trachy*, 821 F. App'x 648, 652 (8th Cir. 2020) (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)) (cleaned up). Even "[a]llegations of malice or corruption do not defeat judicial immunity." *Hamilton*

6

*v. City of Hayti*, 948 F.3d 921, 925 (8th Cir. 2020) (citing *Stump*, 435 U.S. at 355–56). Exceptions to judicial immunity include "nonjudicial actions," or "actions not taken in the judge's judicial capacity," and "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quotation omitted). In this context, the scope of a judge's jurisdiction is construed "broadly." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "[W]hether an act by a judge is a 'judicial' one" turns on "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

All of Ms. Benedict's allegations against Judge Goggins pertain to actions he took as part of "function[s] normally performed by a judge." *Id.* They include "adopt[ing] findings," "den[ying] post-trial relief without hearing," and "dismiss[ing] constitutional objections as 'baseless[.]'" (Dkt. 1 at 3.) Even her more serious, but nevertheless vague, allegations that Judge Goggins "permitted fiduciary alignment with adverse counsel, and ignored sworn allegations of fraud upon the court," engaged in "judicial entrenchment[] and procedural sabotage," and was biased cannot bypass judicial immunity. (*Id.* at 12–13.) Therefore, Ms. Benedict's claims against Judge Goggins in both his official and personal capacity are dismissed. *See Greene v. Gassman*, No. 11-cv-0618 (PJS/TNL), 2012 WL 748374, at *4 (D. Minn. Mar. 6, 2012) ("[The] proposed personal-capacity claims against the Judge Defendants are barred by absolute judicial immunity[.]") (citing *Glasspoole v. Albertson*, 491 F.2d 1090, 1091 (8th Cir. 1974)), *aff'd*, 489 F. App'x 997 (8th Cir. 2012).

The claims against Attorney General Ellison and Assistant Attorney General Timmerman are likewise dismissed. Ms. Benedict points to an email that Mr. Timmerman sent to her as Judge Goggins's attorney in this matter, in which he allegedly "attempted to coerce [her] into withdrawing her federal claims by suggesting her litigation support was improper[.]" (Dkt. 10 at 10; Dkt. 23-1 (email).) Ms. Benedict claims that the communication was "a deliberate extrajudicial act designed to chill Plaintiff's exercise of her right to petition the government[.]" (*Id.*) Further, she alleges that Mr. Ellison is liable for Mr. Timmerman's conduct under a supervisory-liability theory because he was on notice of such conduct, which reflected larger "institutional" issues, and failed to take adequate remedial steps. (*Id.* at 8–9.)

The Court need not reach the issue of whether those claims can survive a motion to dismiss because Mr. Ellison and Mr. Timmerman are entitled to absolute prosecutorial immunity from these claims. "Prosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003)). That immunity covers any actions taken as part of "advocacy on behalf of the government." *Id.*; *see also Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988) ("[A] state assistant attorney general's function as a government advocate entitles him . . . to absolute immunity from suit for damages."); *Tweeton v. Frandrup*, No. 06-cv-1130 (PAM/JSM), 2006 WL 3627010, at *8 (D. Minn. Dec. 12, 2006) ("A government attorney who defends a civil suit is entitled to absolute immunity.") (citing *Barrett v. United States*, 798 F.2d 565, 572–73

(2d Cir. 1986); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991)), *aff'd*, 287 F. App'x 541 (8th Cir. 2008). The challenged conduct of Mr. Timmerman and Mr. Ellison falls squarely within the prosecutorial immunity they are entitled to. It also extends to the claims against Mr. Timmerman in his personal capacity. *See Nelson v. Ellison*, No. 23-cv-2122 (JRT/LIB), 2024 WL 714149, at *2 n.1 (D. Minn. Feb. 21, 2024) (concluding that claims brought against the attorney general in their individual capacity would also be barred by immunity) (citing *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)).

Ms. Benedict's claims against the State Defendants are therefore dismissed with prejudice. *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013) (stating that claims barred by prosecutorial immunity "must be dismissed with prejudice as they fail at the outset as a matter of law") (citing *Trendle v. Campbell*, 465 F. App'x 584, 585 (8th Cir. 2012)).

### B.    Defendant Uhlir

The Court turns next to Mr. Uhlir's motion to dismiss (Dkt. 27). Put simply, Ms. Benedict alleges that Mr. Uhlir brought the probate action against her for improper reasons and engaged in a conspiracy with the other defendants in furtherance of those improper motives. Specifically, Ms. Benedict claims that Mr. Uhlir "initiated a contested probate action seeking to void . . . documents" that designated Ms. Benedict as the "sole grantee" of Decedent's property and ultimately "redirect the estate," "made materially false representations about Decedent's intent" and "withheld exculpatory admissions" throughout the state-court proceedings, and "benefitted financially from the [state] court's final judgment." (Dkt. 1 at 12.) According to Ms. Benedict, Mr. Uhlir's conduct, "paired

9

with the aligned fiduciary and legal strategies of the [other] Defendants[,] forms a critical link in the civil RICO conspiracy and the deprivation of protected property rights." (*Id.*) In addition to depriving her rights under 42 U.S.C. §§ 1983 and 1985, Ms. Benedict asserts that the conduct also constituted a RICO violation under 18 U.S.C. § 1962(d).

As an initial matter, the § 1983 claim must be dismissed because Mr. Uhlir is a private party. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) ("Only state actors can be held liable under Section 1983.") (quotation omitted). It is true that in some cases, "a private party may be held liable on a § 1983 claim if 'he is a willful participant in joint action with the State or its agents.'" *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). But Ms. Benedict does not allege with any specificity, as she must, "at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor[s]." *Id.*

Her § 1985 conspiracy claim, which cites subsections (2) and (3) "for conspiracy to intimidate and injure a party-in-interest engaging in protected legal action," is also inadequately pled. (Dkt. 1 at 9.) "At a minimum, the complaint must state some way in which the named defendants participated in the alleged conspiracy to take away the . . . rights of the plaintiff[]." *Means v. Wilson*, 522 F.2d 833, 840 (8th Cir. 1975). Moreover, "a complaint under 42 U.S.C. [§] 1985(3) must allege facts to show that intentional or invidious discrimination was the object of the conspiracy." *Id.* Here, however, Ms. Benedict merely lists conduct that Mr. Uhlir allegedly took on his own and tethers it, in a rather conclusory fashion, to the conduct of the other defendants. (*See* Dkt. 1 at 12

10

(claiming that Mr. Uhlir's individual conduct amounted to a conspiracy when "paired with the aligned fiduciary and legal strategies of the [other] Defendants").) Otherwise, the complaint is devoid of any specific, factual allegations to support Ms. Benedict's claim that Mr. Uhlir illegally conspired with others to take away her rights. Despite her statements to the contrary, it appears that Ms. Benedict's actual grievance is her loss in the state-court proceeding. But "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

Also insufficiently pled is the RICO claim. For a RICO violation, Ms. Benedict must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)). "'Racketeering activity' consists of the commission of a predicate act, as defined in 18 U.S.C. § 1961(1)." *Id.* (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985)). Moreover, "[a] civil RICO plaintiff must show injury 'by reason of' a RICO violation, that is, injury 'both factually and proximately caused' by the violation." *Id.* (quoting *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728 (8th Cir. 2004)). "Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008).

Ms. Benedict alleges generally that Defendants engaged in "pattern acts of mail fraud (invoicing), wire fraud (email threats), obstruction of justice (omitted evidence, ghostwritten findings), and retaliation (property seizure attempts post-judgment),"

11

ultimately "conspir[ing] to use the color of judicial authority to extract, recapture, and reallocate property that was lawfully designated to Plaintiff under Minnesota non-probate transfer statutes." (Dkt. 1 at 21.) But again, her allegations lack the specificity required to survive a motion to dismiss and amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft*, 556 U.S. at 678. Even "construed liberally," as this Court does when considering a pro se pleading, Ms. Benedict's complaint does not "allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914. For these reasons, the claims against Mr. Uhlir are dismissed.

### C.    Defendants Wetherille, Conway, and Jaspers

Next, the Court addresses the motion to dismiss brought by Mr. Wetherille, Mr. Conway, and Jaspers (collectively "Wetherille Defendants"). (Dkt. 34.) They argue that Ms. Benedict fails to plausibly allege that they violated her constitutional rights and the RICO Act, and her claims must therefore be dismissed for failure to state a claim. (*Id.* at 1.)

The § 1983 claims must be dismissed because the Wetherille Defendants, like Mr. Uhlir, are not state actors. Mr. Conway is a private attorney whose only connection to these matters was that he entered a notice of appearance on behalf of Mr. Wetherille, who was a named creditor in Ms. Benedict's bankruptcy proceeding. (*See* Dkt. 10 ¶ 7.) *See Dubose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999) ("The defendants . . . are private citizens, and although they are attorneys, the conduct of counsel generally does not constitute action under color of law."); *Dunn v. Hackworth*, 628 F.2d 1111, 1112–13 (8th Cir. 1980) ("The actions of privately retained counsel are not considered state action and therefore cannot

form the basis of a [§] 1983 claim."). The same holds true for Jaspers, which is a private entity. (*See* Dkt. 10 ¶ 7; *see also* Dkt. 38 at 8 n.7.) *Cf. Dubose*, 187 F.3d at 1003; *Dunn*, 628 F.2d 1112–13. Even Mr. Wetherille, who was the court-appointed personal representative of decedent's estate in the underlying probate proceeding, is not a state actor. *Cf. Rivera v. Gray*, No. 25-cv-2215 (JWB/LIB), 2025 WL 2104518, at *1 (D. Minn. July 28, 2025) ("[I]t is well-settled that a public defender, even one who was court-appointed, does not act under the color of law and is not a state actor for purposes of a § 1983 claim.") (citing *Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981); *Dotlich v. Kane*, 497 F.2d 390, 391 (8th Cir. 1974)); *Meyer v. Ekola*, No. 15–cv–2564 (SRN/HB), 2017 WL 9274728, at *7 (D. Minn. May 26, 2017) (concluding that "acceptance of the guardianship did not transform [the court-appointed guardian] into a state actor") (citing cases).

As for her remaining claims against the Wetherille Defendants, Ms. Benedict alleges that they "coordinated fiduciary fraud, dual-forum forum manipulation, and obstruction of judicial accountability under color of legal process." (Dkt. 10 at 22.) According to Ms. Benedict, Mr. Conway's participation in the bankruptcy action rendered him an "active participant[] in an enterprise-wide pattern of concealment and strategic litigation evasion— enabling further execution of the predicate racketeering conduct[.]" (*Id.* at 23.) And, in addition to breaching his fiduciary duty to the estate, Mr. Wetherille engaged in mail fraud by "us[ing] email and billing statements to extract funds under false fiduciary pretense." (Dkt. 1 at 35; *see also id.* at 33, 35–38.) Ms. Benedict's sweeping, conclusory claims must be dismissed largely for the reasons explained regarding Mr. Uhlir's motion to dismiss. Even assuming that all of Ms. Benedict's factual allegations are true, *see Cole*, 105 F.4th

13

at 1113, they do not raise "more than a sheer possibility," let alone any possibility, that the

Wetherille Defendants acted unlawfully, *Ingram*, 91 F.4th at 927 (quoting *Iqbal*, 556 U.S.

at 678). As the Wetherille Defendants point out, the alleged conduct was lawfully

undertaken "in the ordinary course of proceedings within the Probate Action" or a related

matter. (*See* Dkt. 36 at 2.) Therefore, the claims against the Wetherille Defendants are

dismissed.

### D.    Courtney Sebo Savica

Next, the Court turns to Ms. Sebo Savica's motion to dismiss. She also argues,

among other things, that Ms. Benedict's claims must be dismissed for failure to state a

claim. (Dkt. 69 at 7–10.)

Ms. Benedict alleges that Ms. Sebo Savica, who represented Mr. Uhlir in the state-

court proceeding, "submitted ghostwritten findings that were adopted verbatim by the

probate court, suppressed exculpatory evidence, and enabled fiduciary misconduct while

advancing a narrative that vilified [Ms. Benedict] through unsupported undue influence

claims." (Dkt. 1 at 11–12.) Ms. Sebo Savica also allegedly "directly coordinated with [Mr.

Wetherille] on litigation planning, billing, and evidentiary tactics[]" such that "[t]heir joint

conduct blurred the statutory line between adversarial process and fiduciary neutrality."

(*Id.* at 16.) Ultimately, the probate proceeding "was the opening move in a racketeering

pattern, executed through a nexus of . . . [Ms. Sabo Savica]," Mr. Wetherille, and Judge

Goggins, who "collectively formed a pattern of racketeering activity in violation of 18

U.S.C. § 1962(d), and further resulted in the deprivation of property without due process

in violation of the Fourteenth Amendment and 42 U.S.C. § 1983." (*Id.* at 17–18.)

14

Again, these allegations do not sufficiently state a claim to relief that is plausible on its face. *See Smithrud*, 746 F.3d at 397. The allegations either point to conduct that was part of Ms. Sebo Savica's duties as opposing counsel in the state-court proceeding or constitute conclusory statements that amount to no more than "[t]hreadbare recitals of the elements of a cause of action[.]" *Ashcroft*, 556 U.S. at 678. Accordingly, these claims are dismissed.

* * *

In sum, the claims against Defendants are dismissed with prejudice. *See Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir. 1998) (stating that a dismissal for failure to state a claim should be with prejudice).

## II.     Ms. Benedict's Motion for Temporary Restraining Order and Preliminary Injunction

Because the Court concludes that Ms. Benedict does not state any claim on which relief can be granted, there is no basis for granting her motion for temporary restraining order and preliminary injunction. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (explaining that injunctive relief is only appropriate where movant has demonstrated, among other things, a likelihood of success on the merits of her claims). Therefore, the motion is denied.[5]

---

[5] Ms. Benedict claims that she "does not seek appellate review of the June 4, 2025 judgment" from the probate proceeding but asks this Court to "enjoin[] Defendants from . . . [e]nforcing or acting upon the June 4, 2025 probate judgment," suggesting that is precisely what she asks this Court to do. (Dkt. 3 at 3.) To the extent that Ms. Benedict challenges the validity of the judgment, the *Rooker-Feldman* doctrine, which requires dismissal "when the federal-court action is brought by a state-court loser complaining of injuries caused by a state-court judgment rendered before the district court proceedings

15

### III.   Mr. Uhlir's Motion for Sanctions

Finally, the Court addresses Mr. Uhlir's motion for sanctions in which he asks the Court to issue a pre-filing injunction that restricts Ms. Benedict's ability to file additional motions and lawsuits in this Court and to impose attorney's fees. (Dkts. 76–77.) He primarily seeks sanctions under Rule 11 but also appears to argue that the Court should sanction Ms. Benedict under its inherent authority.

Courts may impose sanctions under Rule 11 when "a pleading, written motion or other paper (1) is submitted to the court for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; (2) "is not supported by existing law or a nonfrivolous argument for the extension, modification or reversal of existing law"; or (3) "if the allegations contained therein lack evidentiary support."[6] *R&A Small Engine, Inc. v. Midwest Stihl, Inc.*, 471 F. Supp. 2d 977, 978–79 (D. Minn. 2007) (quotation omitted); *see also* Fed. R. Civ. P. 11(b). "The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct[.]" *Vallejo v. Amgen, Inc.*, 903 F.3d

---

commenced and inviting district court review and rejection of that judgment," is applicable here and bars this Court from granting the relief sought. *Sutter & Gillham PLLC v. Henry*, 146 F.4th 699, 702 (8th Cir. 2025).

[6] Under the "safe harbor" provision of Rule 11, a party seeking sanctions must, among other things, serve the motion for sanctions on the offending party prior to filing, and wait at least 21 days after serving it to file the motion to allow the other party to withdraw or correct the improper filing. Fed. R. Civ. P. 11(c)(2). This is "a strict procedural requirement," and failure to provide advance notice of the motion requires denial of the request for sanctions. *See Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1102 (8th Cir. 2024) (quoting *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012)). There is no dispute that the procedural requirements for this Court to grant the motion for Rule 11 sanctions were met here. (*See* Dkt. 77 at 4.)

16

733, 747 (8th Cir. 2018) (quotation and bracket omitted); *see also* Fed. R. Civ. P. 11(c)(4). Such sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

Courts have the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases[.]" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). That power includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Stevenson v. Union Pacific R. Co.,* 354 F.3d 739, 745 (8th Cir. 2004) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)). But this inherent authority is "very poten[t]," and courts should "exercise[] [it] with restraint and discretion." *Schlafly v. Eagle F.*, 970 F.3d 924, 936–37 (8th Cir. 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). With these standards in mind, the Court addresses each type of sanction that Mr. Uhlir requests in turn.

### a.  Pre-Filing Restrictions

First, Mr. Uhlir asks the Court to issue a "pre-filing injunction" that would restrict Ms. Benedict's ability to bring future lawsuits and filings but does not specify the terms of the requested injunction. (Dkt. 77 at 8.) Regardless, the Court need not inquire further because it declines to impose any pre-filing restrictions on Ms. Benedict at this time.

17

Notably, it appears this is the first time that Ms. Benedict has brought a case in this District. Therefore, the dismissal with prejudice is "both a necessary and sufficient response" under these circumstances. *See Hill v. W. Publ'g Co.*, No. 4-96-1032 (JRT/RLE), 1998 WL 1069117, at *6 (D. Minn. Sept. 24, 1998).

### b. Attorney's Fees

Mr. Uhlir also seeks attorney's fees. (Dkt. 77 at 9.) "[A]n award of attorneys' fees is permissible under a court's inherent powers as long as the person being sanctioned has demonstrated bad faith." *Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67 (1980)). A litigant acts in "bad faith" if they "intentionally advanced a frivolous contention for an ulterior purpose, such as harassment or delay." *Actors' Equity Ass'n v. Am. Dinner Theatre Inst.*, 802 F.2d 1038, 1043 (8th Cir. 1986).

The Court determines that, while Ms. Benedict's claims may fairly be characterized as "frivolous," her initiation of this lawsuit does not quite rise to the level of bad faith required to award attorney's fees. As the Court noted, this is Ms. Benedict's first time bringing a case in this federal court. And while the motions before the Court were pending, she did not file any additional motions or otherwise create undue burdens on the Court or on Defendants. Therefore, the Court does not believe that granting Mr. Uhlir's request for attorney's fees would further the "primary purpose of Rule 11 sanctions," which is "to deter . . . litigant misconduct." *Vallejo*, 903 F.3d at 747 (quotation omitted); *see also* Fed. R. Civ. P. 11(c)(4).

So, while the Court denies Mr. Uhlir's motion for sanctions at this time, the Court warns Ms. Benedict that "[*p*]*ro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, and can be sanctioned." *Knapp v. Compass Minn., LLC*, 2024 WL 3755916, at *2 (D. Minn. Aug. 9, 2024) (citing *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)). Should Ms. Benedict continue to bring frivolous claims, the Court may impose sanctions as it sees fit.

### ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**:

1.  Plaintiff Christine Benedict's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3) is **DENIED**;

2.  Defendants' Motions to Dismiss (Dkts. 19, 27, 34, and 66) are **GRANTED**;

3.  Defendant Allen Uhlir's Motion for Sanctions (Dkt. 76) is **DENIED**; and

4.  This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 9, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge